LESTER P. WOOD

V.

JOHN CLARK ET AL.

*Replevin—Sale, by Agent of Debtor in Failing Circumstances, to Sureties —Preferences—Authority of Agent—Construction of Contract—Contingency —Fraud—Instructions—Practice.*

1. Fraud is not to be presumed but must be proved by facts and circumstances in the case. The law presumes any business transaction to be honest until the contrary is shown.

2. It is not error to refuse an instruction though it may contain a correct proposition, when its substance is contained in another instruction, given at the instance of the same party.

3. In an action of replevin, brought by certain creditors of the original owner of goods claimed by them as purchasers from the agent of said owner, against an officer who holds under writs of attachment sued out by other creditors of said owner, it is *held:* That the agent was authorized to make any disposition of the property which his principal might have made; that the principal, though in failing circumstances, might in good faith have preferred particular creditors, and made a sale to them in consideration of

claims; that he might have given preference to his sureties upon their obligations; that said sureties had the right to secure payment of their obligations in preference to other creditors; that the contract of sale made by the agent was subject only to the contingency of other creditors successfully contesting it; that the evidence does not show said transaction to have been fraudulent or entered into with the intent to hinder and delay creditors, and that there was no error in giving or refusing instructions.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of De Kalb County; the Hon. C. W. UPTON, Judge, presiding.

Statement of the case by WELCH, J. Peter H. Evans, prior and up to the 29th day of January, 1885, had been engaged in the sale of agricultural implements, wagons, sewing machines, lumber, etc., at Somonauk in DeKalb County, Illinois. During the time he was thus doing business he had procured John Clark and Stephen D. Wright, two of the appellees, to sign notes for him as sureties. Clark had signed three notes, each for the sum of $875, and interest, payable to John McNamara. Wright had signed as surety for him a note for $1,000 and interest, payable to Anthony Harmon. Evans had also become indebted to the Somonauk Bank on a note for $340 and interest. He was also at the time indebted to a number of other parties, among them the attaching creditors, The McCormick Harvesting Machine Company, J. J. Budlong & Co., Kelley, Rathbone & Co. and C. C. Thompson & Walkup Co. On the 29th day of January, 1885, he left Somonauk, leaving his brother, John F. Evans, in full charge of his business, saying to him when he left that he was in a bad condition financially, and that if he could not get out of it he wanted to be sure and have John Clark and Stephen D. Wright secured; that if he did not make satisfactory arrangements in Chicago he would send him authority from there to settle up his business satisfactory to his wishes. He never returned and his whereabouts is unknown. On the 31st of January he sent to his brother from Chicago a letter, inclosed in which was the following paper, which is marked "Exhibit A."

SOMONAUK, Jan. 26, 1885.

"This is to certify that my brother, John F. Evans, has my consent and is authorized to transact all of my business while I am away, and I shall be responsible for the same.

(Signed)                                P. H. EVANS."

On the 4th of February John Evans met with John Clark, Stephen D. Wright and Harrison Wright who represented the Somonauk Bank at the house of John Clark. The meeting was for the purpose of securing John Clark and Stephen D. Wright as the sureties on the notes of P. H. Evans, and to secure the Somonauk Bank for the note due from P. H. Evans. The amount of the notes and interest which was to be secured amounted to the sum of $4,197. The amount of the property turned over to the appellees by John F. Evans for P. H. Evans at the invoice price was $4,696.86. The sum of $500 was deducted from the invoice price, owing to the unsalable character of a large amount of the property. A bill of sale was given to the appellees for the property thus turned out, signed P. H. Evans, by John F. Evans, agent.

The property was taken possession of by the appellees the next morning, and was in their possession when seized by the appellant under writs of attachment on the 7th day of February.

Messrs. JOHN L. PRATT, A. J. HOPKINS, N. J. ALDRICH and F. H. THATCHER, for appellant.

Messrs. CHARLES WHEATON and LUTHER LOWELL, for appellees.

WELCH, J. This was an action of replevin, by appellees against the appellant, to recover this property. Appellant filed several pleas : *Non cepit, non detinet,* property in P. H. Evans, and justification as Sheriff under writs of attachment. Replications were filed to the pleas. Trial, verdict for the appellees and judgment on the verdict. From which judgment this appeal is taken, and various errors are assigned.

The question in controversy in this case is, as to who was

entitled to the property.    It is insisted by the counsel for the appellant that John F. Evans did not have authority to dispose of this property to the appellees in the manner that he did, and that the transaction was fraudulent, and was made to hinder and delay the creditors of P. H. Evans.    There seems to have been two directions given by P. H. Evans to John F. Evans, one verbally, the other in writing.

John F. Evans states that at the time his brother, P. H. Evans, left him in charge of his business, he told him of notes signed by him, on three of which John Clark was surety, and on one of which Stephen D. Wright was surety, and that he was in a bad condition financially, and that if he could not get out of it he wanted to be sure and have John Clark and Stephen D. Wright secured, and that he had a paper written out, which, if he did not make the arrangement in Chicago satisfactorily, he would send him the paper, so that he could have authority to settle up his business satisfactorily.    That he told him to be sure and secure these two parties, then settle with the rest of them the best he could.    The written authority is that contained in exhibit "A."    We hold that under the authority given by P. H. Evans to John F. Evans, that John F. Evans had a legal right to make any disposition of the property of P. H. Evans that P. H. Evans could have made himself.    He was made his general agent, and left in full possession and control of the business and property.    He had verbal directions and authority what to do in regard to the sureties of P. H. Evans and his creditors.    He had also full powers conferred by the written authority contained in the exhibit "A."    P. H. Evans had the legal right, acting in good faith, to prefer a particular creditor, and to have made a sale to a creditor who was seeking to secure his debt in good faith in preference to other creditors of his.    Morris v. Tillson, 81 Ill. 607.    He had the right to have given preference to a surety upon his obligation.    Nicholas Welsch et al. v. Anton Werschem, 92 Ill. 115.    There is no question as to the *bona fide* character of their claims and demands.    Clark and Wright were his sureties to the extent claimed, and his indebtedness to the Somonauk Bank was of the amount claimed.

The appellees had the right to be secured or paid in preference to any other of the creditors of P. H. Evans, and P. H. Evans or his agent, John F. Evans, had the right to secure or pay them in preference to any of the creditors.

Was the transaction fraudulent and done for the purpose of hindering and delaying the creditors of P. H. Evans? We have held that the claims were *bona fide*, and that the appellees had the right to be secured or paid. Was the property turned out for the real purpose of paying or securing them? The value was fixed to each article of property turned over, at the original invoice price, and after an amount equal to that of appellees' demands was reached it was insisted by John F. Evans that appellees should accept that amount. They refused, and Clark told him that he would be willing to give $1,000 if any one would let him out of it sooner than take any of the property. It was then agreed that they should have the property at the invoice price, to the amount of $500 more than their claims amounted to, for the reason as stated " that a large amount of the stuff was unsalable."

This property was received and accepted by the appellees on these terms.

" We hereby agree that if the title to the property this day sold us by P. H. Evans, per his agent, John F. Evans, shall remain in us and not be replevied or attached, or levied upon by other creditors of P. H. Evans, or said sale to us declared void by a jury or the courts, that we will as soon as all of said property shall have been sold by us, deliver to said P. H. Evans three notes, signed by John Clark as surety with said Evans, now amounting to $2,835; also, one note signed by S. D. Wright, as surety with said Evans, now amounting to $1,007; and also one note in the Somonauk Bank, now amounting to $355, signed by P. H. Evans and John McNamara.

JOHN CLARK,

S. D. WRIGHT,

JOHN CLARK, President,

for Somonauk Bank.

SOMONAUK, ILL., Feb. 4, 1885."

This differs from a technical pledge only in the fact that

there was to be no redemption by the person turning out the property, and in case of the contingency mentioned in the writing not happening, the property was to be taken in full liquidation of the debt, and notes given up for which it was turned out.  It provides that as soon as all the property shall have been sold the notes were to be delivered up.

It is insisted by counsel for appellant, that by the terms of this contract, if any other creditor replevied or attached the goods now in controversy, it was no sale, and the property reverted to P. H. Evans.  We hold that the contract is susceptible of no such construction; the construction to be given to the contract is, that if the appellees should not be deprived of the title to the property, but the title should remain in them, and they should have the benefit of the property or its proceeds, then the notes were to be given up, and they were to take the property for the amount of the claims.  There was but one contingency, and that was that the property should not be taken away from them and they deprived of the benefits of it.

We are unable to perceive from the evidence in this record that this transaction was fraudulent, or entered into with the intent to hinder and delay the creditors of P. H. Evans.  This was a proper question for the jury, and we concur in the conclusion reached by them.  It is further insisted by counsel for appellant that the court erred in giving the fourth, fifth and seventh instructions for the appellees, and refusing certain instructions asked by appellant.  We will consider the fourth and seventh instructions given for the appellees together, as they each involve the question of authority.  The seventh was predicated on the paper marked "Exhibit A," and the jury was told that that paper authorized John F. Evans to transact all of the business of P. H. Evans, and that under that authority John F. Evans would have a right to pay or secure the creditors of P. H. Evans, the same as P. H. Evans would if he was transacting the business, and the fourth instruction directed the jury that if they believed John F. Evans had authority from P. H. Evans to attend generally to his business, that that was sufficient authority to make the disposition of the property he did.

These instructions are in harmony with what we have heretofore said in regard to the authority given by P. H. Evans to John F. Evans, and what John F. Evans had the right to do under that authority. There was no error in giving them. The fifth instruction in effect informed the jury that fraud is not to be presumed, but must be proved by facts and circumstances in the case, and the law presumes any business transaction to be honest until the contrary is shown by proof or circumstances proven in evidence. This instruction announced the law correctly. Appellants could not have been injured by said instruction under the evidence in this case, as there was no evidence tending to show fraud. The first and fifth instructions refused for appellant, gave this instruction to the paper signed by the appellees and the bill of sale signed P. H. Evans, by John F. Evans to appellees, that on the levy of the attachments set up by appellant that the appellees were relieved from all liability to pay P. H. Evans for said property, and such conveyance became and was void as to attaching creditors. We do not feel called upon to say more than we have heretofore said as to the proper construction of said paper. These instructions being in conflict therewith, we hold that they were correctly refused.

The third refused instruction for appellant was properly refused. There was no evidence on which to base the question of reasonable time. The appellees came into possession of the property on the 5th day of February, and it was levied on by the appellant on the 7th of February. It had only been in their possession two days. The fourth refused instruction for the appellant, so far as it announced the law, had been given in other instructions, and the same may be said of the sixth refused instruction. It is not error to refuse an instruction though it may contain a correct proposition, when the substance of it is contained in another instruction, given at the instance of the same party. Curtis W. Boylston et al. v. Samuel Bain et al., 90 Ill. 283.

There was no error in the giving or in the refusal of instructions. The law was correctly given to the jury. The verdict of the jury gave substantial justice. The judgment is affirmed.

*Affirmed.*